IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TANYA P.,[1]                                          No. 6:18-cv-00158-HZ

                        Plaintiff,                   OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


Katherine Eitenmiller
HARDER, WELLS, BARON, & MANNING, P.C.
474 Williams Street
Eugene, OR 97401

        Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for the non-governmental party's immediate family members.

Michael Howard
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Tanya P. brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI"). This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is reversed and remanded for immediate payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on December 12, 2011, alleging disability as of August 1, 2001. Tr. 465.[2] Plaintiff amended her onset date to December 12, 2011, at the hearing. Tr. 854. Her application was denied initially and on reconsideration. *Id.* Plaintiff appeared, with counsel, for a hearing on December 17, 2013, before Administrative Law Judge (ALJ) Janice Shave. Tr. 850. On January 13, 2014, ALJ Shave found Plaintiff not disabled. Tr. 477. On June 26, 2015, the Appeals Council issued a decision finding Plaintiff disabled as of October 7, 2013. Tr. 478–84. The Appeals Council remanded the matter for reconsideration of the period from December 12, 2011, through October 6, 2013. Tr. 485–88.

On March 8, 2016, Plaintiff appeared at a hearing before ALJ Katherine Weatherly. Tr. 903. On May 2, 2016, ALJ Weatherly found Plaintiff not disabled during the relevant period. Tr. 37. The Appeals Council denied review of ALJ Weatherly's opinion. Tr. 9–12.

## FACTUAL BACKGROUND

Plaintiff initially alleged disability based on arthritis, a stroke suffered in 2009, hepatitis C,

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

hernia, back and neck problems, right shoulder pain and numbness, pain in her hip, and "mental problems." Tr. 39. She was 53 at the time of her amended alleged onset date and 57 at the time of the second administrative hearing. Tr. 39, 855, 903. Plaintiff has a high school education but she has no past relevant work. Tr. 36.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot

perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her amended alleged onset date of December 12, 2011. Tr. 26. Next, at step two, the ALJ determined that Plaintiff has the following severe impairments: "cervical degenerative disc disease with myelopathy/cervicalgia; lumbar degenerative disc disease; right shoulder arthralgia; anxiety disorder with aspects of posttraumatic stress disorder (PTSD); cognitive disorder, NOS; bipolar affective disorder; and history of polysubstance dependence." Tr. 27. However, at step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id.* At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following limitations:

> [S]he could lift and carry 20 pounds occasionally and 10 pounds frequently, sit six hours of an eight-hour workday, and stand and walk about six hours of an eight-hour workday. She could occasional[ly] push and pull overhead no more than 10 pounds with the dominant right upper extremity. She could occasionally reach in all directions on the right side. She could never climb ladders, ropes, or scaffolds, and frequently crouch, crawl, stoop, and kneel. She could perform occasional flexion of the neck but must avoid repetitive and prolonged flexion, including looking down. The claimant must avoid even moderate exposure to workplace hazards such as unprotected heights and moving machinery. She could have brief, occasional, and non-transactional interaction with the public. The claimant could understand, remember, and carry out simple routine repetitive tasks.

Tr. 29. Plaintiff did not have past relevant work, but at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as

"Guard, security." Tr. 36–37. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 37.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225–26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) improperly discrediting Plaintiff's subjective symptom testimony; (2) giving little weight to the opinion of examining licensed psychologists, Scott Alvord, Psy.D and David Northway, Ph.D.; (3) giving no weight to the opinion of nurse practitioner, Nan Rich; and (4) giving partial weight to the lay witness testimony of Plaintiff's boyfriend. Pl. Op. Br. 6–28, ECF 17. Because the ALJ erred in the analysis of Plaintiff's

symptom testimony, the lay witness testimony of Plaintiff's boyfriend, and the medical opinions of

Dr. Alvord and Dr. Northway, the Court reverses the ALJ's decision and remands this case for an

immediate payment of benefits.

## I.     Credibility Determination

The ALJ is responsible for determining credibility. *See Vasquez v. Astrue*, 572 F.3d 586,

591 (9th Cir. 2009). Once a claimant shows an underlying impairment and a causal relationship

between the impairment and some level of symptoms, clear and convincing reasons are needed to

reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533

F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering,

"where the record includes objective medical evidence establishing that the claimant suffers from

an impairment that could reasonably produce the symptoms of which he complains, an adverse

credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*,

674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility:

First, the ALJ determines whether there is "objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged";

and second, if the claimant has presented such evidence, and there is no evidence of malingering,

then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's

testimony about the severity of the symptoms.") (internal quotation marks omitted).

When evaluating subjective symptom testimony, an ALJ may properly consider several

factors, including a plaintiff's "daily activities, inconsistencies in testimony, [and] effectiveness or

adverse side effects of any pain medication[.]" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ may also consider the ability to perform household chores, the lack of any side effects

from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

Effective March 16, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p,

governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2.

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," and did not identify evidence of malingering. Tr. 30. The ALJ then concluded that Plaintiff's daily activities were inconsistent with her reported symptoms, and that the objective evidence did not support her claimed limitations. Tr. 29–36. The ALJ discounted Plaintiff's symptom testimony regarding her physical and mental impairments; however, Plaintiff challenges only the ALJ's assessment of her mental impairments and apparently concedes that the ALJ properly rejected her subjective symptom testimony as it related to her physical impairments. *See* Pl.'s Opening Br. 22, ECF 17 ("The ALJ failed to meet the legal and evidentiary standard in this case when considering [Plaintiff's] testimony regarding *mental symptoms* and limitations, and that improperly rejected testimony should be fully credited as true.") (emphasis added).

In 2012, Plaintiff reported that she feels "stressed in group situations like family gatherings," she does not handle stress well, and frequently becomes frustrated. Tr. 172. Her social activities were reportedly limited to visiting her grandchildren once a week and she spent much of her time lying in bed due to depression. Tr. 166–67, 170. She also indicated that she experiences difficulty with concentration and memory. Tr. 171. In her 2013 hearing, Plaintiff testified that she did not go out much by herself and that there are times that she does not shower for as long as a week. Tr. 866, 878. She reported crying six to nine times per week for ten to fifteen minutes each time. Tr. 867–68.

In her 2016 hearing, Plaintiff testified that during the relevant period, she did not go out by herself and she cried a lot. Tr. 914-15. Plaintiff also explained that she did not have insurance for "many years" and when she "finally did get the insurance, [she] was very nervous about going and finding mental health [services]." Tr. 912. She indicated that she was afraid to find out what was wrong with her. *Id.* Plaintiff recounted that her primary care provider did not establish a good treating relationship with her, he "put [her] down," and she "cried every time [she] left his office[.]" Tr. 913.

The Commissioner argues that the ALJ provided two clear and convincing reasons for rejecting Plaintiff's testimony: her activities of daily living and the lack of medical evidence. Def. Resp. Br. 6–7, ECF 18.

A.     Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 26 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

Although the ALJ relied on Plaintiff's activities of daily living in rejecting her testimony regarding her physical impairments, it does not appear that the ALJ relied on Plaintiff's activities of daily living in discounting her testimony about her mental impairments. *See* Tr. 29–36. The Commissioner argues that Plaintiff "participated in a range of activities that were also inconsistent with disabling physical and mental allegations." Def.'s Resp. Br. 7, ECF 18. However, the Commissioner does not identify which activities were related to Plaintiff's mental impairments. The Commissioner cites Plaintiff's ability to independently perform self-care, lift light weights, cook, wash dishes, do laundry, and go shopping. *Id.* In order to properly discredit a claimant, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). Here, neither the ALJ nor the Commissioner indicated which symptom testimony regarding Plaintiff's mental health was contradicted by these activities.[3]

The Commissioner also cites Plaintiff's ability to babysit for family and friends, arguing that "[e]ven occasional childcare has been found to be inconsistent with disabling allegations." Def.'s Resp. Br. 7, ECF 18 (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)). However, in *Morgan*, the court held that the claimant's activities which included chores, yard work, and occasional childcare served as evidence of the claimant's ability to work because they were "physical functions that [were] transferable to a work setting." *Morgan*, 169 F.3d at 600. "[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of

---

[3] The Commissioner argues that the Ninth Circuit has found such activities were sufficient to show a claimant was "quite functional." Def.'s Resp. Br. 7, ECF 18 (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)). However, in *Burch*, the court found that such activities constituted "adequate reasons for partially rejecting Burch's pain testimony." *Burch*, 400 F.3d at 680. It is not clear how such activities are inconsistent with plaintiff's testimony regarding her mental impairments.

physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Here, however, the ALJ did not identify how any of Plaintiff's activities suggested she was able to work. Moreover, there is nothing in the record to indicate that Plaintiff spends a "substantial part of [her] day engaged" in childcare activities. *Id.* Indeed, the record reflects that Plaintiff last performed babysitting activities in 2009, two years prior to the relevant period. Tr. 50, 165. Thus, such activities do not demonstrate that Plaintiff was capable of working in 2011.

Finally, the Commissioner relies on the fact that Plaintiff had a fishing license and enjoyed fishing. The Commissioner argues that "[s]imilar nature-based activities have been found to be inconsistent with debilitating allegations." Def.'s Resp. Br. 7, ECF 18 (citing *Berry v. Astrue*, 622 F.3d 1128, 1234–35 (9th Cir. 2010)). The Commissioner's reliance on *Berry* is misplaced because the purportedly "[s]imilar nature-based activities" are, in fact, not similar. In *Berry*, the claimant "engaged in daily walks of a mile or more" and also "reported camping and hiking at Yellowstone National Park." *Berry*, 622 F.3d at 1235. The claimant in *Berry* had reported that "he regularly needed to lie flat on his back and relied on friends for cooking and cleaning." *Id.* Here, on the other hand, it is not clear how the fact that Plaintiff enjoyed fishing, contradicted her symptom testimony about her mental health.

Moreover, unlike *Berry*, where the claimant was walking or hiking every day, there is no indication here that Plaintiff went fishing on a regular basis. Indeed, there does not appear to be any specific evidence in the record that Plaintiff went fishing even once during the relevant period. An aspiration or desire to engage in an activity is not a proper basis for discounting a claimant's subjective symptom testimony. *See Candice E. v. Berryhill*, No. 6:18-cv-01261-YY, 2019 WL 2550318, at *7 (D. Or. Jun. 20, 2019) ("the mere aspiration of returning to school is not inconsistent with disability"); *Valerie D. v. Berryhill*, No. 3:17-cv-01774-YY, 2018 WL 5255227,

at *5 (D. Or. Oct. 22, 2018) ("the record reflects only that plaintiff wanted to go to the beach, not that she went to the beach or was successfully able to walk on the beach"). Similarly, a vague statement that a claimant enjoys a certain activity is not a proper basis for discounting her symptom testimony.

Therefore, Plaintiff's activities of living do not constitute a clear and convincing reason for discounting her subjective symptom testimony.

B.      Lack of Support from the Objective Medical Evidence

Under certain circumstances, the ALJ can discount a claimant's testimony when that testimony is not supported by the objective medical evidence. *See Batson,* 359 F.3d at 1196 (9th Cir. 2007) (consulting physician "did not believe that [the plaintiff's] 'graphic and expansive' pain symptoms could be explained on physical basis"); *Burch*, 400 F.3d at 681 (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). However, this may not be the ALJ's sole reason for discounting a claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722. Accordingly, even if the lack of medical evidence qualified as a clear and convincing reason, it would not be sufficient because the only other reason the ALJ provided for discounting Plaintiff's mental health symptom testimony was not clear and convincing. Therefore, the ALJ improperly discounted Plaintiff's subjective symptom testimony regarding her mental impairments.

**II.     Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in discounting the opinion of Scott Alvord, Psy.D, and David Northway, Ph.D., examining medical sources. If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a reviewing physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). If a treating

or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. However, the ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

A.     Dr. Alvord

Dr. Alvord provided opinions in 2012, 2013, and 2016. On May 24, 2012, Dr. Alvord conducted an examination of Plaintiff. Tr. 268. After performing a mental status evaluation, a clinical interview, and a battery of behavioral and cognitive testing, Dr. Alvord diagnosed Plaintiff with Bipolar disorder, PTSD, cognitive disorder, borderline intellectual functioning, and substance abuse in full sustained remission. Tr. 272. The doctor concluded that Plaintiff's adaptive functioning was severely impaired and that she would be unlikely to succeed in an occupational setting. *Id.*

In 2013, without performing a second examination, Dr. Alvord supplemented his previous opinion, providing greater detail about Plaintiff's functional limitations. Tr. 318–21. Dr. Alvord concluded that 15% or more of the time, Plaintiff would be unable to "complete a normal workday or workweek without interruptions from psychologically based symptoms" or "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." Tr. 319. Dr. Alvord also concluded that 75% of the time, Plaintiff would be unable to perform the functions of her job "independently, appropriately, effectively, and on a sustained basis." Tr. 321.

In 2016, Dr. Alvord examined Plaintiff for a second time. Tr. 843–49. Relying on his previous opinions, Dr. Alvord retrospectively assessed Plaintiff's functioning between December

12, 2011 and October 7, 2013, and concluded that Plaintiff was "quite impaired" during that period. Tr. 849.

The ALJ gave Dr. Alvord's three opinions "little weight" and provided different reasons for rejecting each of the opinions. Tr. 34–35. Accordingly, the court addresses each opinion separately.

1. Dr. Alvord's 2012 Opinion

The ALJ found that because Dr. Alvord did not review any of Plaintiff's medical records, he was "entirely reliant on [Plaintiff's] presentation and self-report." Tr. 34. If a physician's opinion is based to a large extent on a claimant's self-reports and not on clinical evidence, and the ALJ properly finds the applicant not credible, the ALJ can discount the treating provider's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, however, the ALJ failed to properly discount Plaintiff's subjective symptom testimony. Moreover, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). In *Buck*, the Court held that a clinical interview and a mental status evaluation conducted by the psychiatrist provided sufficient objective measures. *Id.* Here, Dr. Alvord performed a clinical interview and a mental status evaluation. Tr. 268. Dr. Alvord also administered the WAIS-III, WMS III, Trails A & B, Minnesota Multiphasic Personality Inventory, and a number of other behavioral and cognitive tests. *Id.* As such, Dr. Alvord's examination included sufficient objective measures. *See Jeanette R. v. Berryhill*, Civ. No. 6:17-cv-01015-MC, 2018 WL 4773546, at *5 (D. Or. Oct. 3, 2016) (holding that a clinical interview combined with the WAIS IV, Trails A&B, and Beck Depression Inventory tests provided sufficient objective measures).

The Commissioner also argues that because Dr. Alvord had no "'no previous interactions with the claimant," he "'was in a poor position to assess the claimant's statements.'" Def. Resp.

Br. 10, ECF 18 (quoting *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010)).

However, in *Turner*, the ALJ had properly determined that the examining doctor relied almost

entirely on the claimant's self-report. *Turner*, 613 F.3d at 1223. Moreover, the fact that Dr.

Alvord had examined plaintiff only one time cannot itself constitute a specific and legitimate

reason for rejecting the opinion of an examining physician because it would apply across the

board to almost all opinions provided by examining physicians.

The ALJ also found that the medical records "fail[ed] to document consistent issues with

anxiety or depression and the lack of treatment during the period at issue despite seeking and

obtaining treatment for physical impairments is inconsistent with her later claims of significant

issues particularly with anxiety." Tr. 34. However, Plaintiff explained that for many years she did

not have insurance and when she obtained insurance, she was "very nervous" about seeking mental

health treatment. Tr. 912. She recounted that she did not develop a good relationship with her

primary care physician, Dr. Anderson. Tr. 912–13. She also explained that he did not listen to her,

that she would leave his office in tears, and she did not feel comfortable talking to him about the

mental problems she was experiencing. Tr. 913. Moreover, Dr. Alvord determined that Plaintiff's

insight into her mental health was impaired. Tr. 271. The Ninth Circuit has criticized reliance on a

lack of treatment as a basis to reject mental health complaints, opining that "it is a questionable

practice to chastise one with a mental impairment for the exercise of poor judgment in seeking

rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Therefore, Plaintiff's

hesitancy in seeking mental health treatment does not undermine Dr. Alvord's 2012 assessment.

      2.     Dr. Alvord's 2013 Opinion

In 2013, relying on his 2012 examination, and without performing an additional

examination, Dr. Alvord provided a supplemental assessment of Plaintiff's functional limitations.

Tr. 317–21. The ALJ relied on the reasons for discounting the 2012 opinion, which, as discussed

above, were insufficient. The ALJ also found that Dr. Alvord's assessment that Plaintiff "would be off task 75% of the time is inconsistent with an ability to sustain independent living." Tr. 34. As a preliminary matter, Dr. Alvord's evaluation did not state that Plaintiff would be "off task" 75% of the day; rather, Dr. Alvord concluded that 75% of the workday, Plaintiff would be unable to independently, appropriately, and effectively perform the functions of a job in a competitive work setting. Tr. 321. Ineffective or inappropriate performance of job duties is not necessarily the same as being "off task."

Moreover, it is not clear how Plaintiff's "ability to sustain independent living" demonstrates she would be able perform job functions appropriately and effectively. Although Plaintiff was able to independently perform personal care, such as bathing, dressing, and eating, she explained there were times that she would go for a week without showering or leaving the home. Tr. 866. Plaintiff cooked for herself, but she was limited to making simple things that only take a few minutes to cook, like sandwiches and frozen foods. Tr. 168. Plaintiff's eight-year-old granddaughter did her laundry for her. Tr. 870. When Dr. Alvord examined Plaintiff in 2012, she presented as "quite disheveled, malodorous with poor dentition" and he noted that "hygiene was clearly lacking." Tr. 846. Plaintiff acknowledged that she did not do a very good job with regard to her personal grooming. Tr. 168. Accordingly, Plaintiff's minimal ability to care for herself is not proper basis for discounting Dr. Alvord's opinion. *See Molina*, 674 F.3d at 1112–13 (The "claimant need not vegetate in a dark room to be eligible for benefits.") (citation omitted).

### 3. Dr. Alvord's 2016 Opinion

In 2016, Dr. Alvord examined Plaintiff for the second time, but Dr. Alvord mistakenly claimed to have previously examined Plaintiff in both 2012 and 2013, when, in fact, Dr. Alvord had only examined Plaintiff in 2012. Tr. 844. The ALJ found that Dr. Alvord "overstated his familiarity with [Plaintiff] during the period at issue." Tr. 34. The ALJ gave "no weight" to Dr.

Alvord's attempts to "extrapolate back" to the period under consideration. The Court concludes that because Dr. Alvord was retrospectively assessing Plaintiff's functional limitations several years after the relevant period, the fact that he incorrectly believed that he examined Plaintiff as part of the 2013 evaluation, indicates that in 2016, the doctor's memory of the earlier period was not entirely reliable. Therefore, the ALJ properly rejected Dr. Alvord's 2016 opinion.

B.     Dr. Northway

Dr. Northway assessed marked limitations in social functioning as well as moderate limitations in concentration, persistence, and pace. Tr. 239. The ALJ incorrectly asserted that Dr. Northway assessed marked limitations in concentration, persistence, and pace. Tr. 33. The ALJ gave Dr. Northway's opinion concerning *marked limitations* "little weight," finding that it was inconsistent with testing and Plaintiff's self-report. Tr. 33. Because Dr. Northway did not assess marked limitations in concentration, persistence, and pace, it is not clear whether the ALJ intended to reject the moderate limitation that was actually assessed. In any event, the ALJ failed to explain how the testing was inconsistent with either a marked or moderate limitation in concentration, persistence, and pace. Accordingly, the purported inconsistency with testing does not constitute a specific, legitimate reason for rejecting Dr. Northway's opinion. Indeed, Dr. Northway explained that the results from Conners Continuous Computerized Performance Test suggested "poor attention to task and overall inattentiveness." Tr. 232–33. He also concluded that overall, it appeared that "she ha[d] more difficulty on repetitive tasks requiring sustained attention than on briefer measures." Tr. 233.

Dr. Northway opined that Plaintiff's anger and anxiety interfered with her social interaction. Tr. 239. He noted that Plaintiff's anxiety was observable based on her affect and other "physical signs." Tr. 233. The doctor observed that Plaintiff appeared anxious and tearful and that she "squirmed or fidgeted in her seat throughout the interview. Her body was never still." Tr. 229.

The ALJ found that Dr. Northway's opinion was inconsistent with Plaintiff's self-reported symptoms because "[i]t does not appear that [Plaintiff] explicitly reported issues with anger." Tr. 33. To the contrary, Dr. Northway's notes reflect that Plaintiff reported "a history of physical violence toward her but also of responding with violence toward others." Tr. 234. Dr. Northway concluded that Plaintiff appeared to be a relatively "volatile individual." *Id.* Accordingly, the ALJ's rationale is not supported by the record. Thus, the ALJ failed to properly reject Dr. Northway's opinion.[4]

## III.    Other Source Evidence

Plaintiff also contends that the ALJ erred in giving no weight to the opinion of Nan Rich, a psychiatric mental health nurse practitioner (PMHNP). Nurse practitioners are not considered acceptable medical sources. 20 C.F.R. § 404.1513(d) (2013); *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1222 (D. Or. 2015). Information from medical sources other than "acceptable medical sources" may provide insight into "the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. The ALJ must consider several factors when evaluating the opinion of such sources, including: (1) length of relationship and frequency of contact; (2) consistency of opinion with other evidence; (3) quality of source's explanation for opinion; (4) any specialty or expertise related to impairment; and (5) any other factors tending to support or refute the opinion. *See* SSR 06-03p; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under Ninth Circuit law, evidence from "other sources" is considered under the same standard as that used to evaluate lay witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina*, 674 F.3d at 1111 (because physician's assistant was not an acceptable medical source, ALJ could discount physician's assistant's opinion for germane reasons).

---

[4] The Commissioner argues that the ALJ's error regarding the concentration, persistence, and pace limitations was harmless because the inconsistency with Plaintiff's self-report was a valid reason for rejecting Dr. Northway's opinion. Def. Resp. Br. 13, ECF 18. However, that reason was also improper; therefore, the ALJ's rejection of Dr. Northway's opinion was not harmless.

The ALJ gave PMHNP Rich's opinion "no weight" on the basis that "at the time [she] made [her assessment], she had only seen [Plaintiff] twice and it was nearly half a year after the period under consideration." Tr. 35. The fact that PMHNP Rich treated Plaintiff only twice is not necessarily a proper basis for discounting her opinion. Particularly considering the fact that the ALJ gave some weight to the non-examining physicians who neither treated nor examined Plaintiff. Tr. 32. Nevertheless, the fact that PMHNP Rich first treated Plaintiff six months after the relevant period, is a germane reason for discounting her opinion. *See Turner*, 613 F.3d at 1223–24 (holding that the ALJ did not err in declining to address the opinion of an "other" source that was outside the relevant period).

## IV.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. Germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

Plaintiff's boyfriend provided statements regarding her functional capacity in 2012 and 2014. Tr. 174–81, 225–26. The ALJ found that the "physical limitations asserted in the statements [were] not consistent with the rather benign findings on examination." Tr. 30. This was a vague reason given that the ALJ did not identify the specific physical limitations or benign findings that she was referring to. Therefore, it is not a proper basis for rejecting the testimony of Plaintiff's boyfriend. *See Stout*, 454 F.3d at 1054.

The ALJ also found that the 2012 statement did not identify problems related to anxiety that Plaintiff claimed were disabling. Tr. 30. Plaintiff's boyfriend reported that Plaintiff "fights

depression daily." Tr. 174. He explained that sometimes she just stays in bed most of the day. Tr. 175. He also reported that Plaintiff cannot be in a "group setting" and that [e]ven family get togethers are too stressful and she has to leave." Tr. 178. Additionally, he reported that Plaintiff cries a lot due to stress, and in fact, that she cried from the stress of filling out the disability function reports. Tr. 180. While the lay witness did not explicitly use the term "anxiety," it is clear that his report did in fact identify problems related to anxiety. Accordingly, this was not a germane reason for discounting Plaintiff's boyfriend's lay witness testimony.

Finally, the ALJ rejected the 2014 statement on the basis that "the medical record does not support the degree of limitation claimed in the 2014 statement as being present during the period at issue." Tr. 30. Such general references to the record as a whole are not sufficiently specific to constitute a germane reason for discounting the witness's testimony. *See Amber M.S. v. Comm'r Soc. Sec. Admin.*, No. 6:18-cv-427-HZ, 2019 WL 2287734, at *7 (D. Or. May 27, 2019) (citing *Glover v. Astrue*, 835 F.Supp.2d 1003, 1013 (D. Or. 2011) ("the ALJ's general reference to inconsistencies with the 'preponderance of the opinions and observations of medical doctors' is not a specific and germane reason to discount the testimony"). As such, the ALJ improperly rejected the testimony of Plaintiff's boyfriend.

However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless. *Molina*, 674 F.3d at 1121–22. Here, Plaintiff does not contest the ALJ's assessment of her physical impairments and the lay witnesses did not describe physical limitations beyond those alleged by plaintiff. Therefore, the ALJ's error in rejecting the lay witness testimony was harmless, as it related to Plaintiff's physical impairments, but it was not harmless as it related to Plaintiff's mental impairments.

**V.      Remand for Payment of Benefits**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

In this case remand for benefits is appropriate. First, the Court has already explained above that the ALJ has failed to provide legally sufficient reasons for rejecting Plaintiff's testimony, the lay witness testimony of Plaintiff's boyfriend, the 2012 and 2013 medical opinions of Dr. Alvord and the medical opinion of Dr. Northway.

The Commissioner argues that there are inconsistencies between Plaintiff's testimony and the medical record which should be addressed on remand. Def. Resp. Br. 16, ECF 18. However, the Commissioner fails to identify any such inconsistencies. The Commissioner also asserts that "Plaintiff's range of activities and other evidence from the period, which Plaintiff does not raise issues with, corroborated the ALJ's decision." *Id.* Again, however, the ALJ failed to provide any specific examples of such evidence. Furthermore, as discussed above, Plaintiff's activities of daily

living did not provide a sufficient basis for discounting her symptom testimony regarding her mental health impairments.

In determining whether the record is fully developed, the court looks to whether there are "*significant factual conflicts* in the record[.]" *Treichler*, 775 F.3d at 1104 (emphasis added). The crucial question is the extent to which Plaintiff's combined mental impairments would interfere with her ability to sustain work activities on a "regular and continuing basis." SSR 96–8p.  Even if conflicts remain regarding Plaintiff's physical impairments, those would not qualify as "significant factual conflicts" because the crucial question of whether Plaintiff's mental impairments are disabling can be resolved without addressing her physical impairments. *Fulsaas v. Berryhill*, No. 3:17-cv-00296-PK, 2018 WL 2091357 (D. Or. Mar. 22, 2018) *findings and recommendation adopted*, 2018 WL 2090475 (D. Or. May 4, 2018) (remanding for an immediate award of benefits despite "apparent conflicts" with regard to the claimant's physical impairments because the claimant's mental impairments were "in-and-of-themselves disabling").

Plaintiff has been diagnosed with Bipolar disorder, PTSD, cognitive disorder, borderline intellectual functioning, anxiety disorder, panic disorder with social phobia, and attention deficit hyperactivity disorder (ADHD). Tr. 235, 272. In his 2013 opinion, Dr. Alvord concluded that—as a result of her mental limitations—15% or more of the time, Plaintiff would be unable to "maintain regular attendance" or "complete a normal workday or workweek without interruptions from psychologically based symptoms." Tr. 319. Dr. Alvord also determined that based on his evaluation of Plaintiff's mental abilities, she would be unable to perform the functions of her job "independently, appropriately, effectively, and on a sustained basis" 75% of the time. Tr. 321. Dr. Alvord's opinion provides sufficient evidence that Plaintiff could not perform work on a regular and continuing basis. SSR 96–8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Accordingly, further administrative proceedings

would not serve "a useful purpose" because the "crucial questions" have been resolved. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495–96 (9th Cir. 2015).

Furthermore, there have already been multiple hearings at the agency level and the Appeals Council has already sent the issue back to the ALJ once for additional analysis. The remaining question is whether Plaintiff was disabled during the period between December 12, 2011, and October 6, 2013, and the case was already remanded to address this precise issue. This indicates that further proceedings would not serve a useful purpose. *See Frank v. Berryhill*, No, 3:16-CV-02350-HZ, 2018 WL 1710442, at *5 (D. Or. Apr. 5, 2018) (holding that "[f]urther inquiry would not serve any purpose" where there had already been multiple hearings and the Appeals Council had already sent the issue back to the ALJ once). Moreover, because the period under consideration ended nearly six years ago, there is little, if anything, that could be added to the record.

Finally, the improperly discredited evidence is such that, if credited as true, the ALJ would be required to find Plaintiff disabled. Dr. Alvord opined that 15% of the time, Plaintiff would be unable to "complete a normal workday or workweek without interruptions from psychologically based symptoms" or "maintain regular attendance." Tr. 319. Dr. Alvord also determined that more than half the time, Plaintiff would not be capable of independently, appropriately, and effectively, performing job functions in competitive employment. Tr. 321. As such, the record demonstrates that plaintiff was unable to sustain work activities on a "regular and continuing basis."  SSR 96-8p. Therefore, the record reflects that Plaintiff was disabled under the act.

Where each of the credit as true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled." *Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (citing *Garrison*, 759 F.3d at 1021). This case is not one of those "rare instances."

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

Dated this ___20___ day of ~~July~~ Sept, 2019.

MARCO A. HERNÁNDEZ
United States District Judge